**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:09CV286-RJC-DSC**

| | |
|---|---|
| INSIGHT MANAGEMENT )<br>GROUP, LLC, )<br>)<br>　　　　　Plaintiff, )<br>)<br>v. )<br>　　　　　　　　　　　　　　)<br>YTB TRAVEL NETWORK, INC, )<br>)<br>　　　　　Defendant. )<br>　　　　　　　　　　　　　　) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Defendant's Motion to Compel Arbitration or, In the Alternative, to Transfer Venue" (document #2) and "Memorandum of Law in Support of Defendant's Motion to Compel Arbitration or, In the Alternative, to Transfer Venue" (document #3), both filed July 14, 2009; and the Plaintiff's "Brief in Opposition to Defendant's Motion to Transfer Venue" (document #5) filed July 31, 2009. On August 14, 2009, Defendant filed its "Reply Memorandum in Support of Defendant's Motion to Compel Arbitration, or in the Alternative, Transfer Venue" (document #7).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Motions are ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will **GRANT** Defendant's Motion to Compel Arbitration and **STAY** this matter pending the outcome of that proceeding, as discussed below.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Insight Management Group, LLC, a North Carolina limited liability company, is a

business specializing in providing management services to the travel and technology industries. Defendant YTB Travel Network, Inc., a Delaware corporation having its principal place of business in Wood River, Illinois, is a provider of internet based travel booking services for travel agents and home based independent representatives throughout the United States.

For a period of approximately two years prior to January 1, 2006, the parties had an oral agreement whereby Plaintiff provided services to Defendant to support the development and operation of Defendant's programs pertaining to non-profit referring travel agents and corporate referring travel agents. At the request of Defendant, Plaintiff developed a comprehensive training regimen in order to qualify referring travel agents for certification in the program.

In late 2005, Defendant prepared for an initial public offering to take their company public. In order to continue the parties' relationship, Defendant required Plaintiff to execute a written agreement dated January 1, 2006 (the "Agreement") which is the subject of the current dispute. Plaintiff acknowledges in its Brief in Opposition to Defendant's Motion that the Agreement is the focal point of this case. The Agreement contains an arbitration clause that provides as follows:

> M. <u>DISPUTES</u>. In the event a dispute shall arise between the parties as to their respective rights, duties and obligations under this agreement, or in the event of a claim of breach of this agreement not corrected by the breaching party within 30-days after written notice thereof, the parties agree that such disputes shall be exclusively resolved pursuant to binding arbitration under the Commercial Rules of the American Arbitration Association with arbitration to occur at Edwardsville, Illinois. The arbitrator may award, in addition to declaratory relief, contract damages and shall award reasonable attorney's fees and costs to the prevailing party. An award of attorney's fees shall continue through any review, appeal or enforcement of an arbitration award. An arbitration award may be enforced in any court of competent jurisdiction.
>
> The parties hereby waive any right to claim or receive any compensatory, punitive or exemplary damages from one another, save and except in matters found to constitute a knowing and intentional material breach of this agreement. This

provision "M" shall not be construed to prohibit either party from obtaining preliminary or permanent injunctive relief in any court of competent jurisdiction.

Plaintiff filed its Verified Complaint (the "Complaint") in the Superior Court of Mecklenburg County on June 10, 2009 specifically alleging that Defendant "terminated the Agreement without notice or cause", failed to provide Plaintiff "travel commissions and related compensation" pursuant to the Agreement, and that Defendant was unjustly enriched by accepting the benefits of Plaintiff's services and material. In addition to seeking monetary damages, Plaintiff seeks a Declaratory Judgment that both the "NON COMPETITION" and "MANDATORY ARBITRATION" provisions of the Agreement are overly broad, unreasonable, violative of public policy and otherwise unenforceable.

Copies of the Complaint and Summons were served on Defendant on June 15, 2009. Defendant filed a timely Notice of Removal with this Court pursuant to 28 U.S.C. § 1446(b) on July 14, 2009. The removal was proper as this Court has original jurisdiction over the matter based upon diversity of citizenship, as provided in 28 U.S.C. § 1332. On that same date, Defendant filed its "Motion to Compel Arbitration or, in the Alternative, to Transfer Venue."

Defendant's Motions have been fully briefed and are, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C.

3

§ 3. The court must compel arbitration even if the disputed claims are exempted from arbitration or otherwise considered nonarbitrable under state law. Perry v. Thomas, 482 U.S. 483, 489 (1987) (state statute that required litigants to be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 90 (4th Cir. 2005) (FAA preempts state law barring arbitration of certain claims).

The Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25; see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997).

The Fourth Circuit has stated that

> [T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Long, 248 F.3d at 315-16 (internal citations omitted).

On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v.

4

Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).  See also AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997).

Therefore, prior to determining the scope of the arbitration agreement, the court must determine that a valid agreement to arbitrate exists between the parties by applying "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Hill v. PeopleSoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005).  Specifically, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." Gilmer, 500 U.S. at 33 (internal quotations and citations omitted).  For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C.] § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

Plaintiff argues that the Court should deny Defendant's Motion to compel arbitration because the arbitration provision was forced on Plaintiff and is so one-sided and cost prohibitive to Plaintiff that, as a matter of law, it is unconscionable and should not be enforced.  In support of its position, Plaintiff relies heavily on a recent North Carolina Supreme Court case, Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 655 S.E.2d 362 (2008).

In Tillman, the North Carolina Supreme Court analyzed whether an arbitration provision contained in a consumer loan agreement was enforceable as against the individual plaintiffs, two consumers who had purchased various disability and life insurance policies from the defendant insurance company.  When the plaintiffs brought suit against the insurance company regarding

charges of excessive fees and premiums under the terms of the insurance policies, the insurance company sought to compel arbitration. The plaintiffs responded by requesting that the court strike the arbitration provision as unconscionable. The Tillman court stated that

> A court will find a contract to be unconscionable only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

Id. at 101, 655 S.E.2d at 369 (internal quotations omitted).

The party asserting unconscionability must prove both: (1) procedural unconscionability and (2) substantive unconscionability. Id. at 102, 655 S.E.2d at 370. Procedural unconscionability is "bargaining naughtiness" in the form of unfair surprise, lack of meaningful choice and an inequality of bargaining power. Id. at 102-103, 655 S.E.2d at 370. Substantive unconscionability is "harsh, one-sided and oppressive contract terms." Id. at 103, 655 S.E.2d at 370.

As to procedural unconscionability, Plaintiff argues that the bargaining power between Plaintiff and Defendant was unquestionably unequal because Plaintiff is a small, two-man operation wholly dependent upon Defendant for its survival and Defendant is a large, publicly traded, sophisticated corporation. According to the affidavit of Michael Wood, one of the two owners of Plaintiff, the Agreement was drafted by Defendant's attorney, Ted Kindauer, and Plaintiff was not represented by counsel in the course of the execution of the Agreement. Additionally, Wood states that the material terms of the Agreement, including the arbitration provision, were not open to negotiation and were dictated to Plaintiff as the only terms Defendant would allow if Plaintiff wanted to continue doing business with Defendant. In Defendant's Reply brief, Defendant attached three separate e-mail communications between Plaintiff and Defendant (Document #7, Exh. A-C) that indicate the parties negotiated and revised the Agreement over a seven month period.

In the Tillman case, the court found plaintiffs had made a sufficient showing of procedural unconscionability in that "plaintiffs are relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate language in all of their loan agreements." Id. at 103, 655 S.E.2d at 370. The Court finds that the Tillman facts are distinguishable from the present case. While Plaintiff chose not to hire counsel to negotiate the Agreement with Defendant, clearly the parties negotiated and revised the Agreement several times and Plaintiff did make suggestions for revisions to the Agreement. Therefore, the Court finds that Plaintiff cannot establish that procedural unconscionability occurred in this case.

As to substantive unconscionability, Plaintiff argues that it would cause a great financial hardship upon Plaintiff and its principals if they were forced to arbitrate this case in Illinois. In Tillman, the court relied on the Fourth Circuit's analysis of arbitration costs which is "a case-by-case analysis that focuses. . . upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." Id. at 104, 655 S.E.2d at 371 (quoting Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001)). In Tillman, the court found that the plaintiffs "live[d] paycheck to paycheck" and had "limited financial means" which was uncontested. Id. The Court also found that plaintiffs' damage amounts were so low that it was unlikely that any attorney would be willing to represent plaintiffs in arbitration. Id.

Again, the Tillman case can be distinguished from the present case. Plaintiff has made no showing with respect to its inability to pay the arbitration costs. Furthermore, Plaintiff has not demonstrated that the costs of proceeding in arbitration will be any greater than the costs associated with litigating its claims in federal court. Finally, Plaintiff was able to retain counsel to pursue its

7

claims. Therefore, the Court finds that Plaintiff cannot establish that substantive unconscionability is at issue in this case.

Additionally, Plaintiff argues that the arbitration clause is substantively unconscionable because the clause is one-sided and lacks mutuality. Specifically, Plaintiff points to two provisions of the arbitration clause in support of its argument: (1) the mutual limit on damages which prohibits either party from recovering compensatory and punitive damages absent a showing of a knowing and intentional material breach of the Agreement and (2) the mutual injunctive relief provision which allows either party to pursue injunctive relief in a court of law, notwithstanding the arbitration provision.

With regard to the mutual limit on damages provision, Plaintiff argues that this provision serves as an effective bar to claimants except in situations where they are able to demonstrate knowing and willful conduct on the part of Defendant. However, the Court finds that this provision is not one-sided but rather holds Defendant to the same standard for any reciprocal claims it may have against Plaintiff. Consequently, this provision does not amount to substantive unconscionability.

With regard to the mutual injunctive relief provision, Plaintiff argues that while this provision purports to allow both sides to seek injunctive relief, the ultimate effect is that the provision requires claimants to arbitrate their claims while leaving the door open for Defendant to pursue injunctive relief under the non-compete clause contained elsewhere in the Agreement. The Court finds that this provision is not one-sided and that Plaintiff's concern stems from the non-compete provision which they agreed to during the negotiation of the Agreement. This does not amount to substantive uncsonscionability.

Unlike Tillman, this is not a case where the arbitration provisions completely favor a huge corporation over a naive and unsuspecting consumer. Rather, this is a case where contractual provisions between two sophisticated companies were negotiated and bargained for over a seven month period in an arms-length transaction. Because Plaintiff has failed to meet its burden of establishing procedural and substantive unconscionablity, the Court concludes that the arbitration provision should be enforced.

As a final matter, it is clear that, applying the federal policy favoring arbitration, all of the disputes between the Plaintiff and Defendant are within the scope of the arbitration clause. Plaintiff acknowledges in its Brief in Opposition to Defendant's Motion that the Agreement is the focal point of this case. Indeed, the arbitration clause states "in the event a dispute shall arise between the parties as to their respective rights, duties and obligations under this agreement, or in the event of a claim of breach of this agreement" such disputes shall be shall be "exclusively resolved pursuant to binding arbitration under the Commercial Rules of the American Arbitration Association with arbitration to occur at Edwardsville, Illinois." Although the district court has the discretion to dismiss an action where all issues raised therein are arbitrable, the more common practice is to stay the action or those claims pending the outcome of the arbitration in order to provide a convenient forum for confirmation of any ensuing arbitration award. See 9 U.S.C. § 3 ("a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration...."); 9 U.S.C. § 9 ("any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated").

Accordingly, the Court will **GRANT** the Defendant's Motion to Compel Arbitration and

**STAY** this action pending arbitration.[1]

### III. ORDER

**IT IS HEREBY ORDERED** that**:**

1. "Defendant's Motion to Compel Arbitration or, in the Alternative, to Transfer Venue" (document #2) is **GRANTED**, that is, Plaintiff and Defendant are **ORDERED** to submit their dispute to binding arbitration pursuant to the provisions of their arbitration agreement. This matter is **STAYED** pending the outcome of the arbitration. Within 30 days of the issuance of an arbitration award or other resolution of that proceeding, the parties' counsel, jointly or severally, shall report the results to the Court.

2. The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED.**

Signed: August 18, 2009

David S. Cayer
United States Magistrate Judge

---

[1]Because this determination resolves the issue raised in the subject motion, it is not necessary to reach the alternative relief requested (transfer of venue).